BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KELSEY MANWEILER, IDAHO STATE BAR NO. 10604
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>    vs.<br><br>SAMUEL BEJARANO COLIN,<br><br>            Defendant. | Case No. 1:25-cr-00291-AKB<br><br>**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** |

The United States, by and through the undersigned counsel, respectfully submits this memorandum in support of its motion for pretrial detention pursuant to The Bail Reform Act, Title 18, United States Code, Section 3142. As explained herein, the Government seeks the continued pretrial detention of Defendant, Samuel Bejarano Colin, both as a risk of non-appearance and a danger to the safety of others and the community.

## FACTUAL BACKGROUND

The Government hereby incorporates the facts set forth in the affidavit in support of the criminal complaint filed in 1:25-mj-00264-DKG, ECF No. 2. The Government proffers the following additional facts relevant to detention. In February 2025, the Federal Bureau of

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 1

Investigations received reports about a criminal organization operating in the Treasure Valley. The reports indicated that there was an illegal gambling operation during horse racing events at La Catedral Arena in Wilder, Idaho. There were also reports of narcotics trafficking at these events where individuals would walk around "shaking hands" and exchanging drugs. At least one individual was identified as a suspected drug trafficker through law enforcement databases.

In addition to the reports on illegal gambling, firearms were expected to be at the events. Specifically, during the illegal gambling in August 2025, one individual discharged a firearm several times in celebration at the conclusion of the race. When this occurred, there was a call to service for a noise complaint. Undercover operations revealed numerous attendees carrying what appeared to be firearms on their persons at both the August and September 2025 illegal gambling events at La Catedral Arena.

Upon further investigation, law enforcement learned that Defendant was the bookmaker and administrator of the illegal gambling operation, and along with his wife, assisted with taking wagers and paying/collecting the proceeds of the illegal gambling on race day. Defendant posted publicly to his Facebook his illegal activity. Specifically, posting betting brackets and using the comment section to confirm bets. He also used his Facebook to advertise the illegal gambling events at La Catedral Arena. A search warrant executed on Defendant's Facebook further revealed message threads of Defendant taking bets, as well as discussing the logistics of the race, like the minimum wager required for owners to compete, and how many betting pools Defendant would create for each race. During execution of Defendant's arrest warrant, agents found in Defendant's backpack betting ledgers from past horse races that appeared to be the betting brackets he had previously posted images of to his Facebook.

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 2

As part of this investigation, law enforcement traced illegal proceeds from the gambling operation to financial accounts belonging to Defendant. A sampling of 36 transactions from May to October between the years of 2023-2025, show a total of $17,000 in wagers from the illegal gambling events. For example, on July 28, 2025, was a transaction for $2,000 paid out for "hit #1 and hit #4 quiniela."[1] These transactions were across several financial applications, i.e. Zelle, Cash App, and Venmo. This is also just a small sample of financial transactions for Defendant. Further review of Defendant's financials from December of 2022 through May of 2025, show the following deposits into his bank account:

- 58 ATM cash deposits totaling $66,092,
- 296 deposits from Defendant's Venmo account totaling an estimated $133,361.53,
- 121 deposits from Defendant's Cash App totaling $63,218.11

Defendant also received 726 payments via Zelle for $298,156.67. Law enforcement is not aware of any employment history for the Defendant other than his involvement in the illegal gambling operation.

While searching Facebook messages for illegal gambling, agents saw in plain view messages related to drug acquisition. Law enforcement learned that Defendant had received drugs from a supplier in Mexico. In addition to this transaction, financials show the Defendant wiring money through a money remitter in Salt Lake City, Utah to an individual in Mexico. This money remitter is known to law enforcement in Salt Lake as laundering money for individuals involved in drug trafficking.

---

[1] The illegal gambling operation would use the term "hit" to describe a race heat. The word "Quiniela" is a Spanish/English (English spelling "Quinella") word that only refers to a specific type of wager that can be placed on horse races under the parimutuel system of betting.

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 3

Through undercover operations, law enforcement determined that there were aliens unlawfully present in the United States who attended the illegal gambling events. Law enforcement was also able to ascertain that on average there were 250 to 500 people in attendance at the illegal gambling events. Agents anticipated encountering aliens unlawfully present in the United States during the execution of the search warrant and had United States Immigration and Customs Enforcement (ICE) personnel arrive after the execution to process any aliens identified as being unlawfully present in the United States. During the execution of the search warrant on October 19, 2025, ICE identified over 100 aliens unlawfully present in the United States at the illegal gambling event, including the Defendant and his wife.

Several of the individuals detained had large amounts of cash bundled in rubber bands, indicating their intention to illegally bet at the horse races. Some of those individuals were cited in state court for illegally gambling. At time of arrest, officers seized Defendant's cellphone. The screensaver showed Defendant's tattooed arm in front of figurines of Santa Muerte, the patron saint of drug traffickers.

The Defendant is married to one of his co-defendants who was also charged via Indictment for illegal gambling in violation of 18 U.S.C. § 1955. Both are Mexican citizens who are in the United States unlawfully. Defendant and his wife appear to reside together in Nyssa, Oregon, but they are also associated with an address in West Valley, Utah.

## ANALYSIS

The Bail Reform Act provides that a judicial officer shall detain a defendant pending trial where "no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant poses either a danger to the community or a risk of

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 4

non-appearance and it is not necessary to prove both. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The government must establish by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant is a risk of non-appearance. *Id*.

In determining whether pretrial detention is appropriate, the Court should consider all four of the factors identified in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); 18 U.S.C. § 3142(g). Here, the factors weigh in favor of detention as there are no conditions or combination of conditions that would ensure the Defendant's appearance and protect the community.

*Application of the §3142(g) factors show that Defendant is a risk of nonappearance and a danger to the community: supporting pre-trial detention.*

The nature and circumstances of the offense show a propensity for dishonesty. The Defendant's management and operation of an illegal gambling organization in of itself demonstrates a lack of reliability and trustworthiness. He was actively involved in helping the organization carry out illegal activity and he and his wife benefitted from the illegal proceeds. His underlying conduct is concerning and inherently involves dishonesty and deceit. This deception shows this Court that it cannot rely on the Defendant's representations of a release plan.[2] The Court simply cannot trust the Defendant's words. As such, there is no conditions the Court can place that the Defendant will follow.

---

[2] Despite efforts to obtain a release plan for consideration, Defendant has failed to provide one to the Government. Currently, the Government is unaware of any release plan. Thus, has not been given sufficient time to vet a release plan.

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 5

The weight of evidence against him is strong. The issuance of an indictment by a grand jury establishes a rebuttable presumption that the charges therein are supported by probable cause. *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006). He is the bookmaker and manager of an illegal gambling business. He was observed during two undercover operations making and collecting illegal bets. Some of his illegal activity was captured on video. His Facebook is riddled with evidence of his management and operation of this illegal activity. During the execution of Defendant's arrest warrant, Defendant had betting ledgers from past horse races in his backpack. Thus, a conviction for the two federal felonies Defendant is charged with is likely.

As such, the weight of the evidence bears on the nature of the crime, potential punishment, and informs the Defendant's actions on release. *See, e.g.*, *United States v. Calabrese*, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006) ("[f]light is always more likely when a defendant has little or nothing to lose by absconding"); *see also United States v. Zhang*, 55 F.4th 141 at 150 (2d Cir. 2022) ("In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense."). Thus, this second factor weighs strongly in favor of detention.

The Defendant's prior instance of disregarding and violating court orders also shows he is not reliable or trustworthy. The Defendant has a propensity for failing to abide by court orders as evidenced by his criminal history. This includes failures to appear, failing to pay fines, and committing new law violations while on probation. He also does not have a valid driver's license. As evidenced by his criminal history, he repeatedly drives without legally authorization. This history is all indicative of his disregard for rules and regulations. Based on this track record,

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 6

this Court should have little confidence that Defendant would voluntarily abide by conditions of release.

Furthermore, without a valid driver's license and a home address in another state, Defendant has no plan to lawfully be transported to court. Without such a plan, if he drives himself, he will be breaking the law each time he comes to court. This Court should not release Defendant when it cannot impose a condition that Defendant would follow to ensure he does not break the law every time he comes to Court.

He now faces felony federal charges. As our Courts have recognized: "[a]lien defendants facing a sentence [that] measures in years…, to be followed by near certain deportation, [have] a far greater incentive to flee." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1142 (D. Idaho July 10, 2023). Thus, he has an incentive to self-deport or flee the jurisdiction to avoid felony convictions, prison time, and near certain deportation.

Defendant also has the ability to flee. The Defendant's primary tie to the United States appears to be his wife, who is also here illegally and involved in the same criminal organization. Not only does Defendant have little ties to the United States, his only ties to Idaho appear to be the illegal gambling operation. Defendant and his wife appear to reside together in Nyssa, Oregon, but they are also associated with an address in West Valley, Utah. As detailed in the complaint affidavit, the Defendant and his wife have joint bank accounts and as detailed above, access to money. His use of a money remitter in Salt Lake City further shows his lack of ties to Idaho and the United States. Defendant has the means and resources to flee beyond this Court's

**UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** - 7

jurisdiction. For these reasons, the history and untrustworthy character of Defendant weigh strongly in favor of detention.

Defendant is also a danger to this community; a community he has no lawful ties to. He is now aware that individuals have provided information that led to his arrest. *See United States v. Biagon*, 510 F.3d 844, 850 (9th Cir. 2007) (Kleinfeld, J., concurring) (discussing the risk to cooperators). His release creates a risk to these cooperating witnesses given Defendant's ties to an illegal organization and a drug supplier in Mexico. Neither the Defendant nor his wife have lawful employment, nor can they lawfully gain employment in the United States. His history of failing to abide by court orders, his relationship with his wife, their unlawful presence in the United States, lack of lawful way to be employed, access to money and out of state addresses, and their involvement in illegal activity show Defendant is both a risk of non-appearance and danger to this community. For all these reasons, the Government requests the Court detain the Defendant pending trial.

## CONCLUSION

All § 3142(g) factors and the presumption weigh strongly in favor of detention. There are no combinations of conditions of release that will eliminate the risk of non-appearance and the danger he presents to the community. As such, the Government respectfully requests that the Defendant remain detained pending trial.

Respectfully submitted this 27th day of October, 2025.

                                              BART M. DAVIS
                                              UNITED STATES ATTORNEY
                                              By:


                                              */s/ Kelsey Manweiler*
                                              Kelsey Manweiler
                                              Special Assistant United States Attorney